COMMONWEALTH vs. RICHARD M. SANTOS.

Middlesex. October 3, 1978. — December 29, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Delinquent Child. Witness*, Cross-examination, Impeachment. *Evidence*, Juvenile delinquency, Impeachment of witness. *Constitutional Law*, Confrontation of witnesses.

At the trial of a defendant charged with rape, unnatural sexual intercourse, and kidnapping, the judge did not err in refusing to permit the complainant to be impeached by a juvenile record which had been sealed pursuant to G. L. c. 276, § 100B, where the complainant was not on probation on any new charge at the time of trial, was not under suspicion for any alleged crime, and there was no suggestion that she had any motive to cooperate with the prosecution. [922-926]

A sealed juvenile record may not be used to impeach credibility generally, but may be used only in cases in which it bears directly on the witness's bias or motive. [926]

INDICTMENTS found and returned in the Superior Court on January 16, 1975.

The cases were tried before *Linscott*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Robert M. Raciti*, Legal Assistant to the District Attorney, for the Commonwealth.

*Fern L. Nesson*, for the defendant, submitted a brief.

ABRAMS, J. The sole issue presented by these appeals is whether the defendant's constitutional right to confront and cross-examine an adverse witness was restricted by the judge's refusal to permit the complainant to be impeached by a juvenile record which had been sealed pursuant to G. L. c. 276, § 100B. We affirm the convictions.

Santos was convicted on seven counts of rape and un-natural sexual intercourse and one count of kidnapping. He was sentenced to seven concurrent seventeen to twenty-year terms for the rape and unnatural sexual intercourse and to eight to ten years concurrent on the kidnapping charge.[1] Santos appeals pursuant to G. L. c. 278, §§ 33A-33G.

We summarize the testimony. The complainant, age nineteen, testified that on October 27, 1974, at approximately 4:30 P.M., she was forced to enter the defendant's car at gunpoint. Thereafter the defendant drove her to a motel where he tied her with rope, gagged her, hand-cuffed her, beat her, and sexually abused and brutalized her for approximately seven hours. While at the motel, Santos told the complainant to tell everyone that three black men in a white Cadillac automobile were the cul-prits. Santos then took the complainant from the motel bound and gagged. He brought her to some railroad tracks were he put a rope around her neck until she "passed out." Passersby found her and obtained help for her. At first she told everyone, including the police, that three black men in a white Cadillac automobile were responsible. Approximately one week later she told a State policewoman the same facts as she testified to at the trial. She gave the officer a description of the assailant and his car, as well as the name of the motel and number of the motel room. A check of motel registration cards led police to the defendant's car and the defendant.

---

[1] Santos was found not guilty on an indictment for assault with intent to murder. Indictments for assault and battery with a danger-ous weapon, carrying in a motor vehicle two firearms without authori-ty, and carrying a dangerous weapon in a motor vehicle without authority were placed on file with Santos's consent. See *Common-wealth* v. *Delgado*, 367 Mass. 432, 437-438 (1975). The offenses were committed before the effective date of St. 1974, c. 649, § 2, which established a mandatory jail sentence for unauthorized possession in a motor vehicle of a firearm.

Several guns, knives, ski masks, rolls of tape, and handcuffs were found either in the defendant's apartment or in his vehicle. During the trial the complainant accurately described a scar on the defendant's chest.

On cross-examination the defendant brought out inconsistencies between the complainant's trial testimony and her testimony at the probable cause hearing, as well as inconsistencies in testimony at trial. The cross-examination dwelt at length on what had been said to the police and others about three black men in the white Cadillac automobile.

Santos testified that he had picked up the victim hitchhiking on the day of the crime, and that she propositioned him. He stated that he took the victim to the motel room, but said that she left shortly after they entered because she asked him for more money than he had agreed to pay her.

Santos presented alibi witnesses as to his whereabouts during the seven hours in which the criminal activity took place. He admitted ownership of the guns, knife, and gloves described and identified by the complainant.[2] Santos also admitted to having told several lies to the police in the course of giving them a statement. Santos was convicted on all charges except one. See note 1, *supra*.

During a lobby conference held in the course of Santos's cross-examination of the complainant, the defendant sought permission to use the prior juvenile record of the complainant for impeachment. The trial judge, after checking with the probation department,[3] learned that the record had been sealed pursuant to G. L. c. 276,

---

[2] He denied ownership of the rolls of tape.

[3] Neither this court, nor apparently counsel, knows the nature of the juvenile adjudication contained in the sealed juvenile record. It is not clear whether the judge learned of the nature of the charge in talking with the probation department.

§ 100B.[4] The judge ruled that the record could not be used to impeach the witness.[5]

Santos contends that where, as here, a defendant's guilt rests on the jury's assessment of the credibility of an opposing witness it is a violation of the constitutional right to confrontation to deny an accused the right to impeach a witness with a juvenile record which has been sealed. He argues that such a result is mandated in *Davis v. Alaska*, 415 U.S. 308 (1974), and *Commonwealth v. Ferrara*, 368 Mass. 182 (1975). Santos suggests that his

[4] The relevant portion of G. L. c. 276, § 100B, inserted by St. 1972, c. 404, provides: "Any person having a record of entries of a delinquency court appearance in the commonwealth on file in the office of the commissioner of probation may, on a form furnished by the commissioner, signed under the penalties of perjury, request that the commissioner seal such file. The commissioner shall comply with such request provided (1) that any court appearance or disposition including court supervision, probation, commitment or parole, the records for which are to be sealed, terminated not less than three years prior to said request; (2) that said person has not been adjudicated delinquent or found guilty of any criminal offense within the commonwealth in the three years preceding such request, except motor vehicle offenses in which the penalty does not exceed a fine of fifty dollars nor been imprisoned under sentence or committed as a delinquent within the commonwealth within the preceding three years; and (3) said form includes a statement by the petitioner that he has not been adjudicated delinquent or found guilty of any criminal offense in any other state, United States possession or in a court of federal jurisdiction, except such motor vehicle offenses as aforesaid, and has not been imprisoned under sentence or committed as a delinquent in any state or county within the preceding three years.

"When records of delinquency appearances and delinquency dispositions are sealed by the commissioner in his files, the commissioner shall notify forthwith the clerk and the probation officer of the courts in which the adjudications or dispositions have occured, or other entries have been made, and the department of youth services of such sealing, and said clerks, probation officers, and department of youth services likewise shall seal records of the same proceedings in their files."

[5] The lobby conference was unrecorded. In order to preserve the issue for appeal, Santos subsequently moved on the record for allowance of an exception to the judge's ruling. The judge allowed the motion although the Commonwealth objected. The Commonwealth has not argued that this procedure failed to preserve the issue for appeal.

general attack on credibility is not materially different from attempting to show personal bias, interest, or motive. But see *Commonwealth* v. *Bohannon, ante,* 90, 93 n.3 (1978). Thus he concludes that *Davis* and *Ferrara* compel a reversal in this case. We disagree.

We do agree that *Davis* and *Ferrara* establish the principle that a criminal defendant's constitutional right to confrontation may be violated by a trial judge's refusal to allow impeachment of a key prosecution witness by use of his juvenile record. Contrary to the defendants's assertion, however, *Davis* and *Ferrara* do not hold that juvenile records are always admissible to impeach a witness's credibility. Each opinion specifically states that there is no right in every case to impeach a witness by past adjudications of delinquencies. See *Davis, supra* at 321 (Stewart, J., concurring); *Ferrara, supra* at 186-187. See also *Commonwealth* v. *Tomasselli,* 257 Mass. 479, 482 (1926).

Each opinion balanced the State's interest in the confidentiality of a witness's juvenile record with the defendant's right to reasonable cross-examination on the issue of bias. Each rested on the principle that a defendant is entitled as a matter of right to reasonable cross-examination for the purpose of showing bias or motive. See *Commonwealth* v. *Cheek,* 374 Mass. 613, 615 (1978); *Commonweaalth* v. *Ahearn,* 370 Mass. 283, 287 (1976); *Commonwealth* v. *Graziano,* 368 Mass. 325, 330 (1975); *Commonwealth* v. *Michel,* 367 Mass. 454, 459 (1975). *Davis* and *Ferrara* held that the exclusion of the juvenile adjudication unduly hindered the defendant in his effort to show specific bias or motive to prevaricate on the part of the government witness.

In *Davis* the facts showed that the government witness as on probation for the same type of crime (burglary) with which the defendant was charged, and a safe stolen during the crime was abandoned near the witness's home. In those circumstances the court found that Davis's right to "probe into the influence of possible bias in the testimony of a crucial identification witness," outweighed the

State's policy of the confidentiality of juvenile records. *Davis, supra* at 319.

The witness in *Ferrara* was under an order of confinement to the Youth Service Board, which order was suspended at the time the crime was committed and was in protective custody at the time of trial. *Ferrara, supra* at 185. Moreover, the witness's flight from the scene of the crime had focused some police suspicion on him. Therefore the failure of the trial judge to permit use of the contested records allowed a "dissembling answer" by the witness to go unimpeached. *Ferrara, supra* at 188.

As we read *Davis* and *Ferrara* the factors which were considered critical in determining whether juvenile records should have been made available were (1) the probationary status of the witness, (2) some suspicion focusing on the witness, and (3) the witness's motives to please the prosecution. We think the fact that each prosecution witness in those cases was particularly susceptible to pressure from the government was central to the ruling or holding that the use of the record to show bias or motive outweighed any claim of confidentiality. See *United States* v. *Garrett*, 542 F.2d 23, 27 (6th Cir. 1976); *United States* v. *Garcia*, 531 F.2d 1303, 1306-1307 (5th Cir.), cert. denied, 429 U.S. 941 (1976); *United States* v. *DeLeon*, 498 F.2d 1327, 1332 (7th Cir. 1974); Meier, Confrontation—Cross Examination of Juveniles—Sixth amendment secures defendant's right to explore the probationary status of juvenile witness against him. 3 Am. J. Crim. L. 221, 227-228 (1974).

By contrast, in the case before us there is no evidence of any of the decisive factors which compelled the courts in *Davis* and *Ferrara* to allow use of the juvenile records. The juvenile record of a witness cannot be sealed if the witness has been convicted of a crime or adjudicated a delinquent within three years of the termination of the juvenile proceedings sought to be sealed. G. L. c. 276, § 100B. Moreover, as we read this record the complainant

was not on probation on any new charge at the time of trial. Santos does not suggest otherwise.

Moreover, the defendant does not claim and there is no suggestion in the record that the complainant in this case was under suspicion for any alleged crime.[6] Further, Santos does not suggest that the witness had any motive or reason to cooperate with the prosecution. The record is devoid of any basis for finding a prosecutorial threat to the witness's freedom. Thus, none of the factors found in *Davis* and *Ferrara* is present in the instant case.

Absent these factors the Commonwealth's policy of preventing the unnecessary stigmatization of its youth and of providing broadly for the confidentiality of juvenile records is paramount and precludes use of the records. See *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 651-652 (1978). We think the judge properly concluded that the record was not admissible merely to impeach credibility.

Finally, we think it important to repeat that neither *Davis* nor *Ferrara* suggests or holds that all prior convictions or past adjudications of delinquencies of a prosecution witness must be admitted. "We are aware of no constitutional principle which confers on a defendant in every case a right to impeach the credibility of a witness by proof of past convictions or past delinquencies." *Ferrara, supra* at 186-187. See *Davis, supra* at 321 (Stewart, J., concurring). Cf. *Commonwealth* v. *Chase*, 372 Mass. 736, 747-748 (1977) (exclusion of witness's prior inconsistent statement on collateral issue upheld).

We hold, therefore, that a sealed record may not be used to impeach credibility generally, but may be used only in cases in which it bears directly on the witness's bias or motive.[7]

*Judgments affirmed.*

---

[6] The defendant conceded in final argument that the complainant had been the victim of a severe beating.

[7] We think it only reasonable that a defendant seeking to use a sealed record for impeachment "be expected to make some explanation as to how he expects to show bias." *Commonwealth* v. *Cheek*, 374 Mass., 613, 615 (1978).