## Commonwealth *vs.* Ian George Pearce.

No. 95-P-326.

Suffolk. May 6, 1996. - July 7, 1997.

Present: Brown, Perretta, & Flannery, JJ.

Further appellate review granted, 425 Mass. 1108 (1997).

*Rape. Practice, Criminal,* Instructions to jury, Lesser included offense, Argument by prosecutor, Examination of jurors. *Jury and Jurors. Rape-Shield Statute.*

At the trial of an indictment charging forcible rape of a child under the age of sixteen years, there was no error in the judge's instructing the jury on the lesser included offense of statutory rape, where the evidence warranted such an instruction. [80-81]

At the trial of an indictment for rape, in which the prosecutor, in closing argument, asserted facts not in evidence, suggested that he possessed personal knowledge of extraneous, inculpatory evidence, and personally vouched for the credibility of the complainant, reversal of the defendant's conviction was required, where the defendant objected to the argument; the errors went to the heart of the defendant's case, viz., the witness's credibility; the judge provided only boilerplate remedial instructions; and the prosecutor's argument likely affected the outcome of the trial. [81-84] Perretta, J., dissenting.

At the trial of a rape case the judge did not err, in the circumstances, in failing to question members of the jury venire individually concerning the issue of racial bias. [84-85]

At the trial of a rape case, the defendant should have been permitted, subject to judicial control including voir dire of the witness, to inquire about the complainant's sexual activity at the time of the rape, where such evidence was offered as relevant to the complainant's motive to fabricate her allegation against the defendant and not for any purpose prohibited by the rape shield statute, G. L. c. 233, § 21B. [85-88]

INDICTMENT found and returned in the Superior Court Department on February 6, 1991.

The case was tried before *Barbara J. Rouse,* J.

*Linda M. Poulos,* Assistant District Attorney, for the Commonwealth.

*Lissa C. McKinney* (*Dana A. Curhan* with her) for the defendant.

FLANNERY, J. The defendant was convicted on so much of an indictment charging forcible rape of a child under the age of sixteen years, G. L. c. 265, § 22A, as charged rape of a child under that age. G. L. c. 265, § 23. On appeal, he alleges that the trial judge erred in: (1) instructing the jury on a lesser included offense; (2) denying his motion for a mistrial on the basis of improper closing argument by the prosecutor; (3) denying his request for individual voir dire of the jury venire; and (4) limiting his cross-examination of the complainant. We reverse.

The Commonwealth's evidence at trial was to the following effect.

The defendant, who had been engaged to marry the complainant's sister, telephoned the complainant's mother on New Year's Eve to offer to take the complainant and her friends out for the evening. The mother assented. The defendant and complainant had been on similar outings before without incident. At the time, the complainant was twelve years old.

The defendant arrived in his automobile, and the two set off for an amusement arcade in the hope of finding some of the complainant's friends. When they arrived, the arcade was closed. They drove on to another, similar establishment with the same result.

The defendant then drove back to the complainant's home and parked in front. As they sat in the car, the defendant suggested that they either return to his home or continue to drive around. She agreed to continue driving but told the defendant that she had to be back by midnight.

After a brief stop at the home of one of the complainant's friends (the friend was out for the evening), the defendant drove to his apartment. Once there, the defendant led the complainant to his bedroom where she sat down to watch television. The defendant left the room.

When the defendant returned, he grabbed the complainant and pulled her onto the bed. While she cried, and urged him to stop, the defendant removed her underclothes and they engaged in sexual intercourse. She testified that after having intercourse, she used the defendant's bathroom to wash herself.

The defendant then drove her back to her house. During the ride, the defendant asked, "If your mother calls me, what should I say?" The complainant told him, "Don't worry about it."

Once home, the complainant said nothing to her mother about the rape, but instead went straight to the bathroom and washed. About two weeks later, realizing that she was pregnant, she told her mother that she had been raped by the defendant. She also promptly thereafter reported the incident to police.[1]

Some time later, she had an abortion. Samples of fetal tissue were collected and examined to determine, among other things, the approximate date of conception. At trial, a doctor testified that she could not fix the date with any precision and instead provided a range. The range described by the witness arguably included the date of the alleged rape by the defendant.

For his part, the defendant denied having sexual intercourse with the complainant, consensual or otherwise. The defense theory was that the complainant had accused the defendant in order to place the blame on him. To this end, the defendant sought to introduce evidence of the complainant's sexual activity at the time of the alleged rape. All evidence of that nature was excluded by the trial judge, apparently under G. L. c. 233, § 21B, the rape shield statute.

1. *Lesser included offense instruction.* As noted, the defendant was indicted for forcible rape of a child but convicted of the lesser offense of rape of a child (so-called "statutory rape"). The judge instructed the jury on the lesser offense over the defendant's strong objection. As noted, his defense consisted of a complete denial, and he apparently did not want to give the jury an opportunity to return a compromise verdict. The defendant claims that the judge's instruction on statutory rape was not supported by the evidence and so was improper. We must resolve this claim first because, if the defendant is correct, he is not only entitled to reversal of his conviction but dismissal of the indictment as well. See *Commonwealth* v. *Nardone*, 406

---

[1]The prosecution's four fresh complaint witnesses each testified to being told of the rape only after the complainant discovered her pregnancy. Compare *Commonwealth* v. *Lebeau*, 42 Mass. App. Ct. 945, 946 (1997) ("The basis of the fresh complaint doctrine is the presumed natural impulse of one attacked sexually to relate the attack in the immediate aftermath . . ."). There was no objection on staleness or other grounds and the testimony has not been made an issue on appeal.

Mass. 123, 132 (1989) (conviction on lesser offense constitutes acquittal of greater offense).

The test for determining whether an instruction on a lesser included offense is appropriate in any particular case is whether "the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." *Commonwealth* v. *Santo*, 375 Mass. 299, 305 (1978). Stated differently, in order for instructions on a lesser included offense to be warranted, the jury must be presented with some rational basis on which to reject the Commonwealth's proof on one or more of the requisite elements of the greater offense. In *Commonwealth* v. *Egerton*, 396 Mass. 499, 505 (1986), the Supreme Judicial Court concluded that this basis cannot take the form of the mere possibility that the jury might not credit a portion of the Commonwealth's evidence. Rather, the defendant, in some manner, must affirmatively *and* (at least to some degree) effectively rebut the Commonwealth's factual allegations in order for an element of the greater offense to be deemed "in dispute."

However, in *Commonwealth* v. *Thayer*, 418 Mass. 130, 133 (1994), the court departed from the rule delineated in *Egerton*, holding that the possibility of jury disbelief of a portion of the Commonwealth's evidence may in fact provide a basis for an instruction on a lesser included offense. In *Thayer*, as in the present case, the defendants had been charged with forcible rape of a child but were convicted of statutory rape. As here, the defendants in *Thayer* wholly denied the charges — offering no evidence whatsoever to rebut the allegations of the use of force — and objected when the judge provided the lesser included offense instruction. The court, however, held that the instructions on statutory rape were appropriate in that case.

Because the present case is indistinguishable from *Thayer* in that regard, that decision controls the outcome here. We conclude, therefore, that there was no error in the contested instructions.

2. *Prosecutor's closing argument.* The defendant challenges various aspects of the prosecutor's closing argument. Specifically, he alleges that the prosecutor asserted facts not in evidence, suggested that he possessed personal knowledge of extraneous, inculpatory evidence, and personally vouched for the credibility of the complainant. The record largely supports these contentions.

During the prosecutor's closing, he said the following about the complainant's credibility (emphasis added):

> "Why would a twelve-year-old come into this courtroom and say something that wasn't true? Does it make sense? Of course it doesn't. *She told the truth. She said what she experienced on December 31st.*"

Later he added:

> "*This is not a twelve-year-old who was sexually active*, running the streets, doing things that might leave you to believe that she would come in here and lie. Nothing. Absolutely nothing. *I tell you, ladies and gentlemen, she was credible.* And I submit that there was nothing that occurred during the course of this trial that which [*sic*] would make you believe that she didn't tell the truth."

He concluded by stating:

> "It was extremely painful during the course of her testimony. *That wasn't contrived. These allegations aren't manufactured. And believe me*, the primary witness that you have to believe or disbelieve is [the complainant]. You must say to yourself that I believe her."

The defendant claims that in these statements the prosecutor overstepped the bounds of permissible argument.[2]

Assertions of personal opinion by an advocate regarding the credibility of witnesses are prohibited. *Commonwealth v. Chavis*, 415 Mass. 703, 713 (1993). See also S.J.C. Rule 3:07, Canon 7, DR 7-106(c)(4), as appearing in 382 Mass. 787 (1981). Such endorsements, while always prejudicial, are especially damaging when stamped with the imprimatur of a public official, such as a prosecutor. Likewise, the potential for prejudice is great where, as here, the credibility of conflicting witnesses is the key issue for the fact finder to resolve. Although we have said on other

---

[2]Responding to the defendant's motion for a mistrial, the prosecutor said: "I attempted to characterize the evidence as I thought it came in and nothing more." The judge said: "Well, sir, you did do something more, which is that you expressed your own personal belief and the credibility of the victim. That's improper." The motion for a mistrial was denied, however.

occasions that "some measure of jury sophistication with regard to sorting out hyperbole" must be assumed, see *Commonwealth v. Azar*, 32 Mass. App. Ct. 290, 308 (1992), quoting from *Commonwealth v. Good*, 409 Mass. 612, 626 (1991), the prosecutor strayed so far over the line that this tolerance cannot cleanse this summation.

More troubling is that the prosecutor alluded to the existence of potentially important facts that were not supported by the evidence. As noted, the defense was premised on the notion that the complainant had falsely accused the defendant of rape to explain her pregnancy. Although the judge refused to permit the defendant to introduce evidence of the complainant's prior sexual activity, implicit in this defense was the suggestion that she was sexually active. In view of these circumstances, it was highly prejudicial for the prosecutor to argue that "[t]his is not a twelve-year-old who was sexually active, running the streets, doing things that might leave you to believe that she would come in here and lie," where no testimony whatsoever was offered on the question whether she was or was not sexually active.

In determining whether improper argument warrants reversal in any particular case, four points must be considered: (1) whether the defendant lodged an objection; (2) whether the error went to the heart of the defendant's case; (3) the extent of any remedial actions taken by the judge; and (4) whether the error likely affected the result. See *Commonwealth v. Kozec*, 399 Mass. 514, 517-518 (1987). Applying this standard here, we conclude that reversal is required.

First, the prosecutor's argument drew a prompt and strenuous objection from defense counsel.[3] Therefore, we ask whether the errors were prejudicial. Under this standard, we look to whether "the error possibly weakened [the defendant's] case in some significant way . . . ." *Commonwealth v. Schulze*, 389 Mass. 735, 741 (1983).

The prosecutor's improper comments went directly to the key issues at trial: the credibility of the complainant and the question of her prior sexual activity. The prosecutor's remarks strongly undercut the defendant's theory of the case with respect to these matters. Many of the cases relied on by the Commonwealth to the contrary involve application of the different "substantial risk of a

---

[3]The defendant's objection arguably did not extend to the comments concerning the victim's abstinence from sexual activity.

miscarriage of justice" standard embodied in *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

As to the sufficiency of remedial action, the trial judge — despite the defendant's objection — provided boilerplate instructions on the function of closing arguments. Such conventional instructions have been deemed inadequate to cure error, see *Commonwealth* v. *Burke*, 373 Mass. 569, 576-577 (1977); *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 754 (1986). In view of the defendant's objection, the trial judge certainly had the opportunity to take stronger remedial action. Indeed, defense counsel — without success — asked the judge on several occasions to give a more pointed curative charge.

Finally — and perhaps most important — we think that the prosecutor's argument held the potential to affect the final outcome. In assessing the toxic effect of any trial error, a key factor to consider is the over-all strength of the inculpatory evidence adduced at trial. See *Commonwealth* v. *Perez*, 411 Mass. 249, 261 (1991). Where the evidence is strong, the likelihood that improper argument affected the outcome of the trial typically is small. Here, however, there was no physical evidence, eyewitness testimony, or other corroborating evidence linking the defendant to the alleged crime. Rather, the outcome of the case depended solely on the jury's resolution of the contradictory versions of the facts offered by the defendant and complainant. In these circumstances, it is entirely possible that the prosecutor's argument tipped the balance in the Commonwealth's favor. Under the standard set out in *Kozec*, we conclude that the defendant's conviction must be reversed.

3. *Other issues.* We touch on the other issues raised by the defendant as they may arise upon retrial. First, the defendant alleges that the trial judge erred in failing to question members of the jury venire individually concerning the issue of racial bias. The Supreme Judicial Court has concluded that when a defendant is charged with an interracial rape, such individual questioning is required. See *Commonwealth* v. *Sanders*, 383 Mass. 637, 638-640 (1981). Here, however, while the defendant indisputably was black, the complainant's race was less certain. Ultimately, the judge appears to have determined that she was nonwhite, a conclusion supported by defense counsel's statement at trial that she was "of color."

In *Commonwealth* v. *De La Cruz*, 405 Mass. 269, 274 (1989), the Supreme Judicial Court expressed a disinclination to expand the rule announced in *Sanders* beyond situations in which "the defendant and the alleged victim are clearly members of different races in the traditional sense." In view of the evidence concerning the race or races of the complainant and defendant, the record does not show that the judge erred here in failing to find the requisite clear difference referred to in *De La Cruz*.

Our conclusion in this regard is bolstered by the fact that the judge was mindful of the issue of race. She questioned the venire collectively on the issue, see *Commonwealth* v. *Kendrick*, 404 Mass. 298, 303 (1989); *Commonwealth* v. *Mahoney*, 406 Mass. 843, 850 (1990) (judge generally may rely on collective questioning), and at least one prospective juror was excused for cause after displaying racial bias. No more was required.

The defendant also challenges the trial judge's refusal to permit cross-examination of the complainant on the issue of whether she was sexually active.[4] He contends that evidence of contemporaneous sexual activity would have supported the inference that the complainant accused the defendant of rape to avoid punishment for becoming pregnant during consensual intercourse with someone else. The limitation of cross-examination, the defendant contends, denied his constitutional right to present a full defense. See *Commonwealth* v. *Ruffen*, 399 Mass. 811, 814-816 (1987). In imposing the limitation, the judge appears to have relied upon the rape shield statute, G. L. c. 233, § 21B.

The rape shield statute prohibits admission of evidence of a sexual assault victim's sexual history, including evidence of both general reputation and specific acts. The aim of the law is "to prevent defense counsel from eliciting evidence of the victim's

---

[4]The defendant also filed a pretrial motion in limine for the purpose of establishing the admissibility of past instances in which the complainant had been sexually abused. The judge denied the motion. The defendant has not contested that ruling in his brief, so we consider the issue to have been waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

The Commonwealth contends that, during trial, the defendant sought to cross-examine the complainant only as to these prior instances of abuse, rather than the more general (and probative) question of whether she was sexually active at the time of the rape. While the colloquy between the judge and defense counsel cited by the Commonwealth in its brief arguably supports the government's interpretation, defense counsel's earlier exchange with the judge makes it clear that, in fact, her concerns were broader.

promiscuity" in order to prove consent. *Commonwealth* v. *Fitzgerald*, 412 Mass. 516, 523 (1992). The law is not intended, however, to create an absolute bar to the admission of sexual history evidence in all cases. For example, the statute presents no impediment if a defendant seeks to admit sexual history evidence for a purpose other than establishing the victim's promiscuous character. See *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 874-876 (1991). Likewise, where strict application of G. L. c. 233, § 21B, would undermine a defendant's due process guarantees, the statute must yield. *Ibid.*

Unquestionably, there is a delicate balance to be struck between honoring the salutary purpose of the statute and protecting the right of cross-examination. See *Michigan* v. *Lucas*, 500 U.S. 145, 149 (1991). See also the extensive discussion in *Stephens* v. *Miller*, 13 F.3d 998 (7th Cir.), cert. denied, 513 U.S. 808 (1994). Neither the statute nor constitutional considerations require an "all or nothing" approach. For example, even where cross-examination is a right, it is subject to judicial control. If a properly framed question elicits a helpful answer, the defendant is entitled to it. If the answer is unhelpful, he may be effectively bound by it. Similarly, before ruling on the scope of cross-examination, the judge may require a voir dire examination of the witness out of the presence of the jury. The trial judge appears not to have considered either of these measures.

Here, the defendant denied having sexual relations with the complainant altogether. Consent was not then an issue. Rather, as noted, the defendant's theory was that the complainant became pregnant through consensual intercourse with another and sought to avoid blame and opprobrium by claiming that the pregnancy was attributable to rape. That theory in no way relied upon suggesting that the complainant was promiscuous. Moreover, it was the defendant's chief — and only — theory of defense. See *Commonwealth* v. *Joyce*, 382 Mass. 222, 229 (1981) (right to cross-examine victim in rape case may be "last refuge of an innocent defendant"). In these circumstances, we conclude that the judge's total exclusion of evidence and inquiry concerning the complainant's other sexual activity, if any, was error.

In certain respects, this case resembles *Commonwealth* v. *Stockhammer, supra* at 875. There, the defendant contended that the victim had fabricated her charges of rape to avoid the ire of her parents once they had learned that she was sexually active. To

this end, the defendant attempted to introduce evidence that the victim had had consensual intercourse both with him and with another man after the alleged rape. Relying on G. L. c. 233, § 21B, the trial judge excluded all such evidence.

On appeal, the court reversed the defendant's conviction, holding that the contested evidence was directed not at suggesting that the victim was a promiscuous person, likely to have consented to intercourse with the defendant, but instead at the question of the victim's motive to lie. Since the credibility of the parties was the key issue at trial — as in the present case, there was no evidence in *Stockhammer* that a rape had occurred beyond the victim's accusation — the court determined that the omitted evidence formed an essential part of the defendant's case. Its exclusion, therefore, was error. Consent was not a trial issue in the present case, so there was no possibility that the rationale underlying G. L. c. 233, § 21B, would be violated. Thus the reasoning of *Stockhammer* applies here.

Also similar is *Commonwealth* v. *Joyce, supra.* In that case, the defendant sought to introduce evidence that the victim twice previously had been arrested for prostitution, and that her charge of rape was an effort to avoid prosecution for a third such offense. The trial judge ruled that evidence of past sexual history was barred by G. L. c. 233, § 21B. The court reversed, stating that "[w]e do not believe that the prohibition in the rape-shield statute sweeps so broadly as to render inadmissible evidence of specific instances of a complainant's sexual conduct in situations when that evidence is relevant to show the complainant's bias." *Id.* at 227. Notably, the outcome in *Joyce* was unaffected by the fact that, as in *Stockhammer* (but unlike the present case), the key issue at trial was consent. See *Commonwealth* v. *Fitzgerald, supra* at 523; *Commonwealth* v. *Cardoza,* 29 Mass. App. Ct. 645, 648-649 (1990) (defendant permitted to introduce physical evidence collected from victim in support of misidentification defense). Cf. *Commonwealth* v. *Thevenin,* 33 Mass. App. Ct. 588, 592 (1992) (defendant permitted to introduce evidence that victim previously had intercourse with defendant's coworker for purpose of establishing that defendant knew victim had venereal disease, and so would have been reticent to have intercourse with her). There is little to distinguish the present case from either *Joyce* or *Stockhammer,* so a consistent result is required. Therefore, upon retrial the defendant should be permitted to inquire,

subject to judicial control, as suggested above, about the complainant's sexual activity at the time of the alleged rape.[5]

The judgment is reversed, and the verdict is set aside. The case is remanded to the Superior Court for further proceedings consistent with the foregoing. In any event, however, the defendant may be retried for no greater offense than rape of a child under the age of sixteen years, G. L. c. 265, § 23.

*So ordered.*

PERRETTA, J. (dissenting). Because I do not agree that the prosecutor's closing argument requires reversal of the defendant's conviction, I respectfully dissent.

Defense counsel outlined her theory of defense to the trial judge in argument on a motion in limine by which she sought permission to cross-examine the victim about a prior rape. When the victim was eight years old, she was raped by a sixteen year old boy who was convicted and incarcerated for that crime.[1] Proceeding on the premise that the defendant never had sexual intercourse with the victim, defense counsel explained that it was her intention to show that when the victim learned that she was pregnant, she realized that her mother would discover that she had been sexually active. That realization provided the victim with a motive to lie and accuse the defendant, an available target because of family ill-will toward him due to his broken engagement with the victim's sister. Based upon her past experience, the victim believed that the defendant, like her prior rapist, would then be incarcerated and "just go away."

---

[5]We also note that the defendant should have been permitted to pursue the excluded line of questioning wholly apart from the considerations delineated in *Stockhammer* and *Joyce*. During the complainant's direct examination, after the judge had denied the defendant's motion for leave to ask her about sexual activity, the complainant testified, "I never had sex before." The dissent notes, *post* at 93 n.3, that the judge allowed counsel "to cross-examine the victim about what she said to the defendant." However, counsel's request was broader, "now I can impeach her credibility as to having never had sex before," to which the judge responded: "I'm going to stand by my prior ruling." If the limitation was not harmful error initially, it then became so.

[1]During argument on the motion, defense counsel also sought to present evidence that the victim had been molested at age five by her mother's boyfriend. On appeal, however, and as noted by the majority in note 4 of their opinion, *ante* at 85, the defendant does not press that claim.

This theory of defense, that the victim was a sexually active child who was accusing the defendant to keep her mother from learning of her activities, was put to the jury for the first time in defense counsel's closing argument. Defense counsel's opening statement was a brief request that the jurors listen to the evidence closely and refrain from any determination of the facts until all the evidence had been presented. The defendant rested immediately after the close of the Commonwealth's case.

Turning to the prosecutor's closing argument, I agree that some of his points were poorly expressed. However, I do not think that those statements require reversal of the defendant's conviction. To put the disputed statements in context, additional evidence must be recited.

There was evidence to show that when the victim's mother learned that the victim was late in her monthly cycle, she asked the victim whether she, the mother, had something to worry about. The mother testified on direct examination that she was very upset about her daughter's late period because: "In my family we have a terrible problem. I have it and my oldest daughter has it. . . . [B]ecause of bleeding problems that can occur when periods are late in my family. It's really serious." On cross-examination, the mother again explained that she put the question, "Do I have something to worry about," to her daughter "[b]ecause of the bleeding problem that my family has definitely inherited. The females have a terrible time if they skip. They hemorrhage."[2] The mother also stated that the victim knew of the problem and knew that whenever she was late in her cycle, the mother "always anticipated problems." Relying upon the medical evidence as to the possible dates of the victim's impregnation and offering reasons why various statements made by the victim should be deemed incredible, defense counsel pressed in her closing argument the theory that the victim was sexually active, that she did not become pregnant on New Year's Eve, and that she was blaming the defendant to keep her activity from her mother.

> "[S]he realizes that she may well be pregnant. And she realizes that at some point in time she's going to have to tell her mother and she can't just say I'm pregnant. She's got to

---

[2]Although the jury was free to disbelieve the mother's explanation of her question to the victim, there was nothing in the evidence which contradicted her testimony on this point.

point a finger at somebody, at somebody as the father. Is
she going to admit to her mother that she's sexually ac-
tive? No."

". . .

"[A]s she thought more and more and more about being
pregnant, she had to make up some type of a story to
cover herself. That's when the story of the rape was
devised. She didn't want to give her mother just another
headache. Well, why? Because she was sexually active?"

". . .

"[W]hen [the victim] first heard from her mother, 'Do I
have something to worry about,' she again didn't say
anything happened. She ran back upstairs. How did [the
victim] take that? That her mother was questioning her, I'd
suggest, about her sexual activity to a twelve-year-old:
'Do I have something to worry about?' Possibly she did.
This is a child the mother allows to go out at 10:30 at
night on New Year's Eve and then doesn't expect her back
till almost midnight."

The majority has set out those statements of the prosecutor
which they conclude were sufficiently egregious to warrant a
new trial. That conclusion rests upon their application of the
factors set out in *Commonwealth* v. *Kozec*, 399 Mass. 514, 517-
518 (1987). Applying the same factors, I reach a different
conclusion.

To be sure, the prosecutor's statements "went to the heart of
the defendant's case." Nonetheless, the prosecutor was entitled
to refute the defendant's theory. However, he could make no
counter-argument about the evidence of the victim's sexual
activity because there was no such evidence, and that was
exactly the point of his statements.

Additionally, I do not think that the prosecutor expressed any
*personal* belief in the victim. Based upon a reading of the clos-
ing argument in its entirety, I think that the prosecutor was do-
ing no more than marshaling those reasons why the *jury* should
find the victim credible.

Defense counsel's protest was lodged at the conclusion of the
prosecutor's argument. Although the trial judge agreed that the

prosecutor had expressed a personal belief in the victim's credibility, she denied the defendant's motion for a mistrial and stated that she would take the matter up in her instructions. At the conclusion of the side bar conference, the trial judge immediately began her charge. The majority view the trial judge's curative measure as no more than "boilerplate instructions on the function of closing argument." I think the instruction was timely in that it was given at the first reasonable opportunity, which was at the outset of the instructions. Further, I think it was specific and strong:

> "[L]et me begin by explaining what is not evidence in the case and then we'll move on to talk about evidence and your job with respect to that evidence.
>
> "You cannot base your verdict on any of the following. The opening statements and closing arguments made by the attorneys in this case are not evidence. Those are opportunities which the lawyers are given to talk to you directly in the beginning to give you an overview of the case and at the end to summarize it for you. But it is improper for any attorney to express a personal belief in the credibility of any witness, and that includes that of the complaining witness, as well as every other witness from whom you have heard. So, if you heard such, then you are to disregard it, because you are the only ones who decide whether to believe someone and what to make of it."

At the conclusion of the instructions, defense counsel approached the bench and stated that she found the instruction too general to correct the problem. When the trial judge asked defense counsel what she would propose, defense counsel stated that she wanted a specific reference to the prosecutor's characterization of the witness being credible or telling the truth. The trial judge reminded defense counsel that she had made specific reference to the victim and added that she would give "one final instruction with respect to their deciding this case solely on the evidence, not on the basis of any emotional plea." Defense counsel responded, "Yes. Something that's an emotional, that type of situation." The trial judge then instructed:

> "[Y]ou must base your verdict solely on the evidence. Anything having to do with emotion or sympathy for one

side or the other must be set aside and disregarded, and any plea for you to make or to decide this case on emotion must be disregarded by you."

Defense counsel made no objection to this additional instruction.

It is apparent from the jury's verdict that notwithstanding the prosecutor's statements, and consistent with the trial judge's instructions, they did not accept completely the victim's testimony and apparently disbelieved her account of force by the defendant. I attribute the fact that they did not accept the defendant's theory of defense, that she was with someone other than the defendant on the night in question, to the total absence of evidence that she was sexually active rather than to the prosecutor's closing argument.

Although I think the prosecutor had the right to make the points he did, I readily accept that he could have couched his argument in different terms. However, based upon the evidence, the instructions, and the verdict, I conclude that the prosecutor's statements do not require reversal of the defendant's conviction.

My conclusion requires me to consider the defendant's claim that the trial judge erroneously precluded him from cross-examination of the victim about her prior sexual activity. The majority, while reversing the conviction on the basis of the prosecutor's closing argument, concludes that the restriction placed on cross-examination was erroneous and that "upon retrial the defendant should be permitted to inquire, subject to judicial control . . . about the complainant's sexual activity at the time of the alleged rape." *Ante* at 87-88.

At trial, the defendant offered the following theory in support of the right to cross-examine the victim about her sexual activities. When the victim discovered that she was pregnant, she realized her mother would know that she was sexually active. Based upon her past rape where the offender was convicted and incarcerated, she could claim that the defendant had raped her. Because he too would be convicted and "just go away," her mother would not learn of her activity. The trial judge's refusal to allow such questioning of the victim was based upon the facts that the prior accusation of rape was not false and that there was a total absence of evidence to show that the victim had been sexually active.

In each of the cases relied upon by the majority as support for some inquiry into whether the victim had been sexually active (see *Commonwealth* v. *Joyce*, 382 Mass. 222 [1981]; *Commonwealth* v. *Elliot*, 393 Mass. 824 [1985]; *Commonwealth* v. *Stockhammer*, 409 Mass. 867 [1991]; *Commonwealth* v. *Fitzgerald*, 412 Mass. 516 [1992]; *Commonwealth* v. *Cardoza*, 29 Mass. App. Ct. 645 [1990]; *Commonwealth* v. *Thevenin*, 33 Mass. App. Ct. 588 [1992]), the defendant was able to make a specific offer of proof as to evidence directly relevant to the theories of defense, e.g., evidence of prior arrests for prostitution and planned civil litigation relevant to a motive to lie, scientific evidence relevant to show that the complained-of intercourse had been with someone other than the defendant, evidence of the victim's condition would make the defendant's denial of intercourse credible.

Because pregnancy proves intercourse, the question in this case is whether the victim's pregnancy, taken with the presumption of innocence accorded the defendant, who denied any intercourse with the victim, entitle him to inquire about whether the victim had intercourse with someone other than him during the relevant time frame. Although I agree with the majority on this point, that such circumstances entitle the defendant to a limited voir dire, I do not think he is entitled, as of yet, to a new trial.

A voir dire hearing may fail to produce any evidence of sexual conduct by the victim during the relevant time frame. If that were to happen, the matter would end. Because disbelief of testimony does not constitute evidence of the contrary proposition, see *Commonwealth* v. *Michaud*, 389 Mass. 491, 498 (1983); *Commonwealth* v. *Camerano*, 42 Mass. App. Ct. 363, 367 (1997), there would be nothing for a jury to consider and, therefore, no need for a new trial.[3] Based upon my conclusion that the

---

[3]The majority, at note 5 of their opinion, *ante* at 88, state that the victim's testimony, "I never had sex before," was itself sufficient basis for allowing the defendant to inquire about her sexual conduct for purposes of impeaching her credibility. The trial judge understood the victim's testimony to be that as the victim struggled with the defendant, she told him that she was scared, that she never had sex before. On that basis, the trial judge advised defense counsel that although she could not inquire about the victim's sexual conduct, she was free to cross-examine the victim about what she said to the defendant. If there was doubt in defense counsel's mind as to whether the victim's testimony went only

prosecutor's closing argument does not necessitate a reversal of the defendant's conviction but that the defendant was entitled to make inquiry on voir dire about the victim's sexual conduct, I would affirm the defendant's conviction and remand the matter to the Superior Court for a limited evidentiary hearing on the issue of the victim's sexual conduct relevant to the time period in question and consideration of whether, as a result of that hearing, a new trial is warranted. Cf. *Commonwealth* v. *Figueroa,* 413 Mass. 193, 203-204 (1992), *S.C.,* 422 Mass. 72 (1996).

---

to her conversation with the defendant, or was a present assertion of fact, defense counsel chose not to pursue the issue.

Even assuming that the defendant had the right to impeach the victim's credibility on account of that statement, that right would not be so broad as to allow an unlimited inquiry into the victim's sexual history where there is a total absence of evidence to show that the victim had engaged, voluntarily, in intercourse in the past.