## COMMONWEALTH *vs.* FRANTZ R. THEVENIN.

No. 91-P-1026.

Plymouth. October 14, 1992. - November 19, 1992.

Present: PERRETTA, FINE, & GILLERMAN, JJ.

*Rape. Rape-Shield Statute. Evidence*, State of mind.

In the circumstances of a rape trial, during which cross-examination of the
    defendant elicited implausible testimony about his lack of interest in
    engaging in sexual intercourse with the complainant, the defendant
    should have been allowed to introduce evidence that he had been told
    by a coworker, approximately one month before the alleged rape, that
    the coworker had developed a venereal condition as a result of sexual
    intercourse with the complainant; the exclusion of the proffered evi-
    dence under the rape-shield statute, G. L. c. 233, § 21B, was error re-
    quiring reversal. [593-594]

INDICTMENT found and returned in the Superior Court De-
partment on May 1, 1989.

The case was tried before *Cortland A. Mathers*, J.

*Eric Brandt*, Committee for Public Counsel Services, for
the defendant.

*Paul C. Dawley*, Assistant District Attorney, for the
Commonwealth.

FINE, J. The defendant was convicted of rape. The issue on
appeal is whether evidence the defendant sought to introduce
in an attempt to refute the complainant's testimony was
properly excluded under the rape-shield statute (G. L. c. 233,
§ 21B). The proffered evidence was that he had been told by
a coworker a month or so before the alleged rape that the
coworker had had intercourse with the complainant and, as a
result, developed a venereal condition known as "crabs" (pu-
bic lice), and because of that knowledge, notwithstanding
sexually provocative behavior on the part of the complainant,
the defendant did not want to have sexual intercourse with

her. We agree with the defendant that, in the circumstances, the evidence should not have been excluded.

The Commonwealth presented the following evidence at trial. On a Friday evening in July, 1988, the complainant, sixteen at the time, along with two female friends, travelled by car from Plymouth, where they lived, to an apartment in Brockton, which the defendant shared with another young man. The five young people were previously well acquainted. They left the apartment together to attend the Brockton Fair, and they returned late. The complainant, tired and "a little light-headed" from drink, lay down to rest on the bed in the defendant's bedroom. From this point on, the complainant's and the defendant's versions of the events differ sharply. The complainant testified that a few minutes later the defendant entered the room and lay down next to her on the bed. She and the defendant talked for a while, after which the complainant gave him a hug, rolled over, and went to sleep. She awoke to find the defendant on top of her. He proceeded to have both digital and natural sexual intercourse with her while she kept saying "no" and screaming. The defendant testified, on the other hand, that he entered the bedroom first and lay down, and the complainant followed. As the two were lying on the bed, according to the defendant, the complainant rubbed up against him, put her leg over him, moaned, breathed in his ear, and told him she was "horny." With her actions implying consent, he engaged in digital intercourse. He left the room, however, without their having had natural sexual intercourse.

After the Commonwealth rested, the defendant presented a motion seeking permission to present the evidence in dispute. Specifically, the defendant sought to have the coworker testify that he had sexual intercourse with the complainant in June of 1988, that as a result he developed "crabs," and that he had discussed the problem with the defendant before the incident in this case. In addition, the defendant sought permission to testify that he did not think he could contract the disease from digital intercourse but that, because of his fear of developing the condition, he was disinclined to have natu-

ral sexual intercourse with the complainant. Defense counsel argued that the evidence, tending to prove that the defendant did not have natural sexual intercourse with the complainant, was necessary for him to present his defense.

The judge heard counsel on the motion but did not conduct a voir dire. Because, in his view, "crabs" is more easily cured than certain other venereal diseases, and because he doubted that the defendant thought that the complainant still had the disease, the judge concluded that fear of it would not "deter a sexually aroused young man who had his mind on satisfaction." He ruled that the proffered evidence was only marginally relevant and denied the motion.

The trial resumed, and the defendant took the witness stand and recited his version of the events. In the course of his direct testimony about his encounter with the complainant in the bedroom, he made a brief reference to "something" he had been told about her. The prosecutor objected, and the defendant was instructed to make no further reference to anything he had been told. On cross-examination, the prosecutor reviewed with the defendant in detail each of the complainant's sexually provocative actions and comments to which the defendant had referred in his direct testimony and questioned him in reference to each such action and comment about his disinterest in engaging in natural sexual intercourse. Defense counsel objected, and a sidebar discussion ensued in the course of which the judge said to the prosecutor: "I'm having a real problem with my ruling now. You've got him looking like a jackass." Nevertheless, other than terminating the line of questioning, the judge took no further action.

We consider the defendant's contention on appeal that the judge's exclusion of the evidence constituted prejudicial error notwithstanding the defendant's admission to the act of digital penetration which could have been a separate basis for the rape conviction. We do so based upon the following reasoning: there was only one indictment alleging rape; the evidence at trial included two separate acts, digital intercourse and natural sexual intercourse; the defendant testified that

the digital intercourse was consensual; it is possible that the jury found consent to the digital intercourse and convicted the defendant on the basis of nonconsensual natural sexual intercourse.

Apart from the rape-shield statute, a defendant would have the right to introduce evidence concerning his state of mind which tends to disprove that he would have committed a particular criminal act. For example, one charged with a crime for which financial gain is the usual incentive may show that he was in good financial circumstances at the time. See *Commonwealth v. Cooper*, 264 Mass. 368, 376-377 (1928); *Commonwealth v. Ellison*, 376 Mass. 1, 27 n.17 (1978). Compare *Commonwealth v. Chretien*, 383 Mass. 123, 135 (1981) (Commonwealth may present evidence that rape victim was the plaintiff in a divorce action against the defendant, and therefore presumably hostile towards him, to show the unlikelihood of her consenting to subsequent sexual intercourse).

With two exceptions not here applicable, G. L. c. 233, § 21B, prohibits introduction in a rape case of "[e]vidence of the reputation of a victim's sexual conduct" and "[e]vidence of specific instances of a victim's sexual conduct."[1] The proffered testimony would have revealed a "specific instance" of

---

[1]General Laws c. 233, § 21B, as amended by St. 1983, c. 367, provides:

"Evidence of the reputation of a victim's sexual conduct shall not be admissible in any investigation or proceeding before a grand jury or any court of the commonwealth for a violation of sections thirteen B, thirteen F, thirteen H, twenty-two, twenty-two A, twenty-three, twenty-four and twenty-four B of chapter two hundred and sixty-five or section five of chapter two hundred and seventy-two. Evidence of specific instances of a victim's sexual conduct in such an investigation or proceeding shall not be admissible except evidence of the victim's sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim; provided, however, that such evidence shall be admissible only after an in camera hearing on a written motion for admission of same and an offer of proof. If, after said hearing, the court finds that the weight and relevancy of said evidence is sufficient to outweigh its prejudicial effect to the victim, the evidence shall be admitted; otherwise not. If the proceeding is a trial with jury, said hearing shall be held in the absence of the jury. The finding of the court shall be in writing and filed but shall not be made available to the jury."

the complainant's sexual conduct with an individual other than the defendant. On its face, therefore, the statute required its exclusion.

The statute is not always interpreted literally, however. In some instances, when the proponent of evidence of prior sexual conduct was not seeking to use it for a purpose which the statute forbids, the court viewed the inquiry as outside the statute. As to the statutory purpose, "[t]he rape-shield statute is principally designed to prevent defense counsel from eliciting evidence of the victim's promiscuity as part of a general credibility attack," typically on the question of consent. *Commonwealth* v. *Fitzgerald*, 412 Mass. 516, 523 (1992) (inquiry whether complainant had had sexual relations with someone other than the alleged rapist on the night of the incident not improper under the statute because it suggested misidentification and not that the complainant was promiscuous as part of an attack on her credibility). See *Commonwealth* v. *Joyce*, 382 Mass. 222 (1981) (evidence that complainant had been arrested for prostitution admissible, notwithstanding the statute, to show possible bias). In other instances, exclusion of evidence falling squarely within the express prohibitions of the rape-shield statute has been found to be erroneous based upon the basic constitutional right of a defendant to present a full defense. See, e.g., *Commonwealth* v. *Ruffen*, 399 Mass. 811, 814-816 (1987) (proffered evidence of previous sexual abuse admissible to show how child victim had acquired familiarity with sexual matters); *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 875-877, 879 (1991) (proffered evidence had a tendency to prove bias and motivation to lie); *Commonwealth* v. *Cardoza*, 29 Mass. App. Ct. 645, 648-649 (1990) (proffered evidence relevant to the defendant's claim of misidentification). A defendant's constitutional right to put forth his full defense outweighs the interests underlying the rape-shield statute, however, only if he shows "that the theory under which he proceeds is based on more than vague hope or mere speculation," and he may not "engage in an unbounded and freewheeling cross-examination in which the jury are invited to

indulge in conjecture and supposition." *Commonwealth* v. *Chretien*, 383 Mass. at 138.

Although the reasons expressed by the judge for excluding the evidence when he made his preliminary ruling are speculative and unconvincing, the information the defendant sought to introduce would have been embarrassing to the sixteen year old complainant, and it had a potential for encouraging a prolonged collateral inquiry. See *Commonwealth* v. *Joyce*, 382 Mass. at 227. Moreover, an open-ended exception for state-of-mind evidence concerning a defendant's fear of contacting a disease would cut a gaping hole in the protection afforded rape victims by the rape-shield statute. Recognition of such a general exception, given the prevalence of sexually-transmitted diseases, would undoubtedly encourage a significant number of inquiries into the sexual history of rape complainants, causing them humiliation and discouraging them from reporting the crime to law enforcement authorities.

We need not decide, however, the limitations on any such state-of-mind exception to the rape-shield statute or even whether the judge's initial decision to exclude the evidence was either not required by the statute or inconsistent with constitutional requirements. This is because of the way in which the issue reemerged during the defendant's cross-examination. The prosecutor's inquiry, given the defendant's testimony on direct examination, was not improper. However, it succeeded in making the defendant's testimony concerning his actions appear altogether incredible even though the defendant had sought to offer a plausible explanation, the credibility of which should have been for the jury. As another potential witness was available to substantiate the explanation, the defendant's theory was based on "more than vague hope or mere speculation." *Commonwealth* v. *Chretien*, 383 Mass. at 138. At least by that point in the trial, it should have been abundantly clear to the judge that the defendant's fear of contacting "crabs" was highly relevant to his defense and that he was unfairly being deprived of the opportunity "to present . . . [his] version of the facts," *Com-*

*monwealth* v. *Louraine*, 390 Mass. 28, 33 (1983), quoting from *Washington* v. *Texas*, 388 U.S. 14, 19 (1967), to the jury in the only manner he could possibly do so. That deprivation was of constitutional dimensions. See *Commonwealth* v. *Francis*, 375 Mass. 211, 213, cert denied, 439 U.S. 872 (1978).

The judge's comments indicated that he was aware of the problem during the sidebar discussion, but he declined to change his earlier ruling. Although no direct request was made by defense counsel that the judge do so, we think the defendant's objection to the prosecutor's cross-examination and the ensuing discussion at sidebar more than adequately brought the issue again to the judge's attention and made such a direct request unnecessary.

The error was not harmless. There was no medical or scientific evidence to support the claim of natural sexual intercourse, and the fresh complaint testimony was to the effect that the complainant had been raped, without any details. The defendant is entitled to a new trial. As the issues at any retrial are likely to develop in the same manner as they did at the first one, a motion to introduce the evidence which is the subject of this appeal should be allowed.

*Judgment reversed.*
*Verdict set aside.*