Commonwealth vs. David Lloyd Smith.

Hampden. April 6, 1994. - June 14, 1994.

Present: Liacos, C.J., Abrams, Nolan, Lynch, & Greaney, JJ.

*Practice, Criminal*, Trial of defendants together, Severance. *Controlled Substances.*

In a criminal case in which the two defendants did not present mutually antagonistic defenses but rather shared a common approach to raising a reasonable doubt, the judge did not err in denying a motion for severance of trials. [125-126]

The judge at a criminal trial properly within her discretion limited the scope of one defendant's cross-examination that threatened to prejudice his co-defendant; the record did not support the defendant's contention that, by reason of the judge's denial of his subsequent motion to sever his trial from his co-defendant's, he was denied the opportunity to present on cross-examination exculpatory evidence or evidence that would have strengthened his defense. [126-129]

Indictment found and returned in the Superior Court Department on January 13, 1989.

The case was tried before *Elizabeth A. Porada*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Terry Scott Nagel* for the defendant.

*Theresa M. Sheehan*, Assistant District Attorney, for the Commonwealth.

Greaney, J. Beginning on April 19, 1989, the defendant, David Lloyd Smith, was tried before a jury in the Superior Court together with a codefendant, Phillip Richard Jennings, on charges of trafficking in cocaine, G. L. c. 94C, § 32E (*b*) (4) (1992 ed.), and possession of marihuana with intent to distribute. The jury convicted both defendants on the indictments charging trafficking in cocaine and acquitted both on the indictments charging possession of marihuana with intent

to distribute. The defendant, who fled during jury delibera-
tions, was eventually apprehended on November 27, 1992,
and he was sentenced on the trafficking conviction on De-
cember 18, 1992, to a term of from sixteen to twenty years
at the Massachusetts Correctional Institution, Cedar Junc-
tion. Represented by new counsel on appeal, the defendant
argues that the judge's failure to allow his motion, made dur-
ing trial,[1] to sever his trial from that of Jennings, who is not
a party to this appeal, resulted in a limitation of cross-exami-
nation that denied him his Federal and State constitutional
rights to present a full defense. We allowed the defendant's
application for direct appellate review and now affirm his
conviction.

The background of the case is as follows. The Common-
wealth claimed that the arrests of the defendant and Jen-
nings were the result of a sixteen-hour surveillance leading to
an attempted sale of cocaine to an undercover police officer.
The defendant claimed that he had never met Jennings
before the arrests, that the police had bungled Jennings' ar-
rest and that he (the defendant) had been arrested in order
to discredit him as a witness because he had observed the
police "planting" drugs on Jennings. Jennings maintained
that he was not involved in any drug sale, and that the police
had "planted" the cocaine and fabricated the entire incident.

According to the prosecution's witnesses, all of whom were
police officers involved in the surveillance of the defendant
and Jennings, the investigation that led to the defendant's ar-
rest began about 11 A.M. on December 27, 1988, and, with
an interruption in the early evening hours, culminated soon
after 2:30 A.M. the following morning. Shortly before the ar-
rests, an undercover Springfield police officer went with an
informant to a location in Springfield, 5 Dell Place, seeking
to purchase one pound of cocaine from two people (John
Waltermire and Cheryl Ann Murray). The four drove in the

---

[1]The defendant also moved for severance prior to trial before another
judge in the Superior Court. That motion was denied, as was a subsequent
motion for reconsideration.

officer's automobile to a telephone booth, where Waltermire made a call. After the call they proceeded to the intersection of Dearborn and Wilbraham Streets.

Five or ten minutes later, the defendant arrived at the intersection driving a gray Chevrolet automobile. Waltermire entered the defendant's automobile and had a conversation with the defendant, after which Jennings arrived in another automobile (a black Nissan Pathfinder automobile), and joined the conversation. Jennings then drove away. The defendant, with Waltermire still in his vehicle, made a U-turn and stopped parallel to the officer's vehicle. Waltermire told the officer to follow the defendant's vehicle. The two vehicles were driven to the Charm Cafe. After a brief wait, Waltermire again directed the officer to follow him back to the corner of Dearborn and Wilbraham Streets. Waltermire then got back into the officer's automobile while the defendant drove away.

Around the same time, another Springfield police officer observed Jennings arrive at the rear of 91 Norfolk Street and enter an apartment. The defendant arrived in the Chevrolet automobile shortly thereafter, got out, leaving the motor running, and glanced up and down the street. Jennings emerged from the building carrying a white plastic bag and passed by the defendant. They each left the area separately in their respective vehicles.

The defendant then reappeared at the corner of Dearborn and Wilbraham Streets where the first officer (and Waltermire) had been waiting for about ten minutes. The defendant parked his automobile across the street from the officer's automobile. Waltermire then got into the defendant's vehicle. A few minutes later, Jennings arrived. Jennings, carrying a white package, walked over to, and entered, the defendant's automobile. Waltermire left the vehicle and knocked on the window of the officer's vehicle. Several police officers then converged on the defendant's vehicle, placed the defendant and Jennings under arrest, and seized the package. The officers took Jennings' keys from him in order to drive the Nissan Pathfinder to the police station. One of the keys was later

used to open and search the 91 Norfolk Street apartment, pursuant to a warrant. Cocaine, marihuana, and personal papers[2] linked to Jennings, but not to the defendant, were seized at the apartment.

The defendant testified in support of his version of events. He stated that he received a telephone call from Waltermire around 1 A.M. on December 28 asking him to go out to a club. He had never before socialized with Waltermire, and did not know him well. Because it was late, the two men decided to go to the Charm Cafe for a beer rather than the club. Near the intersection of Dearborn and Wilbraham Streets, the defendant and Waltermire got into the defendant's automobile, made a U-turn, and drove to the Charm Cafe. They left the cafe about 2 A.M. and drove back to the intersection where Waltermire asked to be dropped off. Almost immediately, according to the defendant, several automobiles with bright lights converged on him. A police officer opened the door of the defendant's automobile and struck him in the head with a gun, cursing the defendant and calling him "Jamaican shit." Another officer then kicked the defendant in the face. The defendant was placed up against his vehicle, where he saw Jennings for the first time. After searching the defendant (and Waltermire and Jennings) without finding anything, the police demanded the keys to Jennings' vehicle. The police left, and returned a few minutes later, saying, "We got [the cocaine]."

Jennings did not testify at trial, but relied on cross-examination of other witnesses, and on the defendant's testimony and evidence, to attack the Commonwealth's case. In closing argument, Jennings' counsel pointed out perceived inconsistencies and failures in the police undercover operation, argued that the entire stream of events depicted by the police witnesses was implausible and unworthy of belief, and maintained that Smith's testimony as to what occurred "had a

---

[2]These papers were turned over to agents of the Internal Revenue Service, and were not admitted in evidence at the trial. The drugs found at the apartment were admitted in evidence.

ring of truth in it." Jennings' counsel urged the jury to conclude, in substance, that the police had "planted" the cocaine and manufactured the case against Jennings.

We next outline the events at trial that gave rise to the claim on appeal that there should have been severance. In his opening statement, the defendant's trial counsel asserted that the defendant was not the subject of any police investigation, that Jennings had been investigated "for two to three months," and that to complete the investigation the police had to "catch [Jennings with drugs] in a constitutional setting." Counsel went on to indicate that the defendant had come innocently on the scene and would describe what had occurred. Counsel then asserted, "This stuff [the cocaine] was planted, and [the defendant] because he witnessed [an] unconstitutional arrest and because he threatened a prestigious bust the Springfield Police Department was making, became an arrestee in . . . [the codefendant's] arrest."

On the second day of trial, during the cross-examination of Officer John Delaney, the judge, on objection by Jennings' trial counsel, refused to allow the defendant's trial counsel to inquire whether the police had been investigating Jennings for cocaine distribution for two to three months. The defendant's trial counsel argued that the length of the investigation was critical to his defense. The judge disagreed, denied a motion for severance, and limited the defendant's trial counsel to cross-examination of the officer as to the investigation during the sixteen hours prior to the arrests.[3]

---

[3]The pertinent part of the colloquy on the motion to sever under consideration is as follows:

DEFENSE COUNSEL: "I gave an offer of proof [with an earlier] motion to suppress, there's plenty of testimony that the investigation of [the codefendant] had been going on for two or three months into his dealing of cocaine in the area, and the Commonwealth is not allowing me to establish that [the codefendant] is the prime suspect here, and it goes right to the heart of my case, because [the defendant] was basically arrested that night, in front of his house, with this gentleman who had been investigated for three months."

THE JUDGE: "As I understand it, the tenor of your defense . . . is that the cocaine was planted, is that correct, on your client, or at least on [the

We now turn to the merits of the appeal. When criminal charges against two or more individuals "arise out of the same criminal conduct," Mass. R. Crim. P. 9 (b), 378 Mass. 859 (1979), it is presumed that those individuals will be tried together. "Joinder expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice time and energy to serve upon juries, and avoids the necessity of recalling witnesses to successive trials." *Commonwealth* v. *Moran*, 387 Mass. 644, 658 (1982).

"If it appears that a joinder . . . of defendants is not in the best interests of justice, the judge may . . . grant a severance of defendants, or provide whatever other relief justice may require." Mass. R. Crim. P. 9 (d), 378 Mass. 859 (1979). Severance must be granted "when the prejudice resulting from a joint trial is so compelling that it prevents a defendant from obtaining a fair trial." *Commonwealth* v. *Moran*, *supra*. Resolution of this question is committed to the sound discretion of the trial judge. *Commonwealth* v. *Cepulonis*, 374 Mass. 487, 499 (1978).

Unlike many other cases in which severance is sought, this case does not involve mutually antagonistic defenses, where

---

codefendant]?"

DEFENSE COUNSEL: "On Mr. Jennings."

THE JUDGE: "And, as a result — is your client — do you plan to call him?"

DEFENSE COUNSEL: "Oh, yes."

THE JUDGE: "And the tenor of his testimony, is it going to be that he saw [the codefendant] with any cocaine?"

DEFENSE COUNSEL: "Never with any cocaine, but they saw [the police] take the keys. The tenor of my defense is that the Springfield police have been after [the codefendant] for two to three months. They had him in the palm of their hands that night, except for the fact that they had to make an unconstitutional search of the car. I'm just explaining why I need to go two or three months back. [The defendant] witnessed that and was also placed under arrest, alleged with being a part of this whole thing."

THE JUDGE: "That defense does not rise — it is not so mutually antagonistic to anything in front of this Court that gives rise to severance, and that is what I want to establish here. I see no basis for a severance at this particular point. I will give you the subject matter, was [the codefendant] under surveillance on that evening."

the acceptance of one party's defense necessarily precludes the acquittal of the other. See *Commonwealth* v. *Moran, supra* at 656-657, and cases cited. In this case the defenses presented by the defendant and Jennings were, for the most part, united and common. Jennings claimed that the police fabricated his arrest by planting the drugs. The defendant supported that claim and portrayed himself as an innocent victim who was arrested because he just happened to witness alleged police misconduct. Both the defendant and Jennings relied on discrepancies in the testimony of the police officers (some called by the prosecution but most by the defendant) to support their claim that the Commonwealth's case was implausible. The defendants thus "shared a common approach to raising a reasonable doubt." *Commonwealth* v. *Mahoney,* 406 Mass. 843, 849 (1990).

The defendant argues, nonetheless, that the joint trial interfered impermissibly with his constitutional right, protected by the State and Federal Constitutions, "to produce evidence favorable to his cause, and to effectively cross examine witnesses." His concern is with the judge's ruling denying him the opportunity to establish that Jennings had been under investigation for involvement with narcotics for two to three months. He contends that it was improper for the judge to protect against material prejudice to Jennings by limiting the defendant's ability to present his case. In these circumstances, he maintains, it was an abuse of discretion to deny the defendant's motion to sever.

As might be expected, a severance question of the type raised here is essentially fact-based and not one in which a multiplicity of decisions will be found which afford useful comparison. A somewhat similar claim was considered in *Commonwealth* v. *Best,* 381 Mass. 472 (1980). The defendant in *Best* was attempting by cross-examination to demonstrate the bias of a prosecution witness against herself and the codefendant, who was her son. Among other subjects, the defendant inquired concerning the witness's involvement in a murder, in which, according to the witness, the codefendant also had been involved. The judge limited the defendant's

cross-examination on this matter "primarily to avoid needless prejudice to [the codefendant]." *Id.* at 489.

We said in *Best* that the argument presented to the court was "not so much grounded on the failure to sever as on the right to cross-examine adequately." *Id.* Relying on the judge's discretion to control the scope of cross-examination, "particularly, perhaps, when directed to showing a witness's bias," *id.*, and the fact that the witness's bias had been adequately demonstrated by other questions, we concluded that the limit imposed on the defendant's right of cross-examination was within the judge's discretion. The decision in *Best* thus acknowledges (implicitly if not explicitly) that, in the case of a joint trial, a judge may limit the scope of impeachment evidence or cross-examination on the basis of prejudice to a codefendant, as long as the judge gives careful and adequate consideration to the defendant's right to a fair trial. *Commonwealth* v. *Moran, supra* at 658. See *United States* v. *Foote,* 920 F.2d 1395, 1397-1400 (8th Cir. 1990) (no error in denial of severance, on grounds of prejudice to codefendant, although defendant was denied testimony of investigator who allegedly would have provided testimony beneficial to defendant); *United States* v. *Drougas,* 748 F.2d 8, 18-21 (1st Cir. 1984) (no error in denial of severance, on, among other grounds, prejudice to codefendant, although two defendants were denied potentially helpful testimony concerning a codefendant's ownership of a boat that allegedly was used for smuggling). The dispositive question in this case is whether the judge's ruling, denying the defendant the opportunity to show that Jennings had been under police investigation for two to three months, effectively deprived him of evidence that was exculpatory, or that would have significantly strengthened his innocent bystander defense.

The record does not support the defendant's contention that the exclusion of evidence concerning the duration of the police department's investigation of Jennings "made it virtually impossible for [the defendant] to argue that he was framed to preserve the case against [the codefendant]." The jury heard abundant other evidence tending to suggest that

the investigation culminating in the arrests of the defendant and Jennings was an important one for the Springfield police department. Fourteen members of the department (ten of them called by the defendant) testified to being involved in the surveillance and investigation that led to these arrests. Numerous unmarked police vehicles were used in the surveillance and considerable care was taken by the police so that the defendants would not realize they were being followed. The jury heard testimony that the street value of the cocaine seized that night (from the automobile and from the apartment) exceeded $750,000. Testimony as to the duration of the investigation leading to the defendant's and Jennings' arrests would have tended to prove the importance of the investigation, but this point obviously was proved by other compelling evidence. In addition, the case presented by the Commonwealth strongly suggested to the jury the inference that Jennings was the central figure in this distribution of narcotics. There was testimony that the police had the apartment at 91 Norfolk Street under surveillance before Jennings and the defendant drove to that location. Papers seized from the safe at 91 Norfolk Street linked Jennings, but not the defendant, to the apartment.[4]

---

[4]*Commonwealth* v. *Thevenin*, 33 Mass. App. Ct. 588 (1992), relied on by the defendant, is clearly distinguishable from this case. The defendant in the *Thevenin* case was accused of rape. According to the defendant, a friend had told him that the complainant had a venereal disease. For this reason, he said, he had engaged in certain consensual conduct, but not in natural sexual intercourse. The defendant was prepared to testify to his state of mind, and to call his friend as a witness. The judge excluded all evidence of this nature pursuant to the rape-shield statute, G. L. c. 233, § 21B (1992 ed.).

The defendant testified, avoiding the excluded subject matter. The prosecutor's cross-examination, while proper, "succeeded in making the defendant's testimony concerning his actions appear altogether incredible even though the defendant had sought to offer a plausible explanation, the credibility of which should have been for the jury." *Id.* at 593.

The evidence that the defendant sought to elicit in this case, while relevant, was not so crucial to the defense that its exclusion rendered the defendant's testimony incomprehensible or nonsensical. The *Thevenin* case is also distinguishable because, unlike this case, in *Thevenin*, "another poten-

A defendant is not entitled to severance because he may wish to use a different trial strategy than his codefendant, or even if he "would have had a better chance of acquittal had he been tried alone." *Commonwealth* v. *Moran, supra* at 659. In this case, the defendant was not deprived of exculpatory evidence, nor was the excluded evidence central to his defense. We conclude that the judge did not abuse her discretion in denying severance.

*Judgment affirmed.*

tial witness was available to substantiate the [defendant's] explanation."
*Id.*