COMMONWEALTH *vs.* KEVIN PAUL DeCOSTE.

No. 99-P-1466.

Middlesex. March 8, 2001. - May 29, 2001.

Present: BROWN, BECK, RAPOZA, GELINAS, & KAFKER, JJ.

*Evidence,* Relevancy and materiality, Bias, Prior misconduct, Presumptions and burden of proof, Consciousness of guilt. *Witness,* Bias.

At a rape trial, the judge was within his discretion to exclude evidence relating to a charge that the victim had raped a mentally handicapped girl, which the defendant had sought to introduce to establish a motive for the victim to lie, especially where the charge against the victim was remote in time, and the thoroughness of the judge's voir dire revealed no promises, rewards or inducements or any other offer of assistance, help or benefit or evidence to support an expectation or anticipation of such. [693-697]

At a criminal trial, the judge was within his discretion to allow the Commonwealth to question the defendant's mother and sister about their failure to contact the police with certain exculpatory evidence, where the defendant's mother and sister knew the details of the charges pending against him, where their "familial relation" to the defendant gave them a reason to make the information available, where a detective had questioned the defendant concerning a crime, where they knew how to contact the proper authorities, and where neither the defendant's lawyer nor the defendant himself had instructed them not to go to the police. [697-699]

At a criminal trial, the judge erred in admitting certain evidence of acts committed by the defendant subsequent to the offense for which he was charged as evidence of consciousness of guilt; however, the error resulted in no prejudice to the defendant, where the evidence was ambiguous and, for the most part, irrelevant. [699-701]

INDICTMENT found and returned in the Superior Court Department on June 26, 1996.

The case was tried before *Charles M. Grabau,* J.

*John D. Fitzpatrick* for the defendant.

*Eric R. Barber-Mingo,* Assistant District Attorney (*Kevin L. Ryle,* Assistant District Attorney, with him) for the Commonwealth.

KAFKER, J. The defendant, Kevin DeCoste, appeals from his

convictions on two counts of statutory rape. The defendant was a counselor at a school for troubled children. The child he was charged with raping was a fifteen year old student at the school. The defendant raises three issues on appeal. He claims the trial judge erred in (1) prohibiting the defense from cross-examining the complaining witness for bias concerning a rape charge that had been brought against him in another county and was still pending, albeit inactive, for the past two years; (2) allowing the Commonwealth to question the defendant's mother and sister about their failure to contact the police with their exculpatory evidence; and (3) permitting "as consciousness of guilt" a statement made by the defendant at a school staff meeting and his sudden decision to quit his job at the school the next day.

1. *The evidence presented at trial.* Troubled boys between the ages of seven and fifteen reside and receive treatment at the Riverside School (school) in Lowell. The complainant, Ted,[1] had attended the school since June, 1995, and the defendant began working there in December, 1995. As a residential counselor, the defendant interacted closely with the students, supervising their activities and eating meals with them. Although he was not the person primarily responsible for Ted at the school, the defendant spent a great deal of time with him. In their discussions, the defendant learned of Ted's desire to buy some collectible cards for a game called "Magic," and he invited him on an outing to purchase the cards. The excursion was authorized by Ted's case manager. Prior to this occasion, the defendant had not taken a single student out of the facility alone.

On February 17, 1996, the defendant picked Ted up at school and drove him to two different stores to purchase the cards. In all, the defendant spent over $100 of his own money on cards for Ted before driving to the house where the defendant lived with his mother. When the defendant and Ted entered the house, they encountered the defendant's mother who was downstairs in the living room. After briefly chatting with her they went upstairs to the defendant's bedroom. Ted testified that no one other than the defendant's mother was present in the house the entire time he was there. He testified that once they entered the

---

[1]A pseudonym.

bedroom, the defendant locked the door. The defendant then showed Ted photographs of Ted and another student, telling Ted that he wanted to adopt the two boys. Shortly thereafter, the defendant unbuttoned Ted's pants and performed oral sex on him for "two minutes."

Ted testified that after he ejaculated, the defendant said to him, "Now, it's your turn." Ted then performed oral sex on the defendant for "five minutes." Ted testified that the defendant told him, "I will seek revenge on you in some way," if he discussed what had just occurred with anyone.

The defendant denied that anything untoward, including oral sex, occurred while he and Ted were upstairs at his house. The defendant testified that, after buying the cards, he drove home to get money he kept in the desk drawer in his bedroom. He stated that they were in his bedroom "about three minutes" with the door open the entire time. He further testified that he introduced Ted to his sister, who "startled" the defendant at one point when he discovered her standing in the bedroom doorway.

Approximately three months after their outing, at a weekly group therapy session on May 13, 1996, Ted reported the incidents that are the subject of the indictments in this case to the group leader.

2. *The decision to exclude the evidence regarding the prior rape charge.* The defendant claims that the trial judge committed reversible error by allowing the Commonwealth's motion in limine to exclude evidence relating to a charge that Ted had raped a mentally handicapped girl. The trial judge conducted a voir dire to determine whether any promises, rewards, inducements or other offers of assistance or help had been made to Ted, or whether there was any evidence of any anticipation or expectation of assistance or benefit on Ted's part.

At the voir dire Ted testified that he had been charged by the Essex County district attorney's office but that it had been almost two years since he had last appeared in Lawrence Juvenile Court; he had not had any contact directly or through lawyers with the Essex County prosecutors since he claimed the defendant had raped him; neither the Middlesex County prosecutors nor any police officers or other officials involved in the defendant's case had talked to Ted about the charge against him

in Essex County; he was not aware of whether the charge was still pending against him[2]; and no promises or rewards or offers of assistance or help had been communicated to him by anyone regarding what would happen in Essex County if he testified in the defendant's case. He also stated that he expected no benefit to come to him at the school from testifying. On this basis, the judge allowed the Commonwealth's motion in limine.

"Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge. . . . Moreover, the judge's determination of these questions will be upheld on appeal absent palpable error." *Commonwealth* v. *Dunn*, 407 Mass. 798, 807 (1990).

In the instant case the defendant sought to introduce the prior charge as relevant to establishing a motive for Ted to lie. To assess whether this defense theory was "based on more than vague hope or mere speculation," *Commonwealth* v. *Thevenin*, 33 Mass. App. Ct. 588, 592 (1992), quoting from *Commonwealth* v. *Chretien*, 383 Mass. 123, 138 (1981), the trial judge conducted a thorough voir dire, which revealed no evidence of promises, rewards or inducements or other offers of assistance, help or benefit. Nevertheless, the Supreme Judicial Court has concluded: "The possibility that a prosecution witness is hoping for favorable treatment on a pending criminal charge is sufficient to justify inquiry concerning bias, even if the Commonwealth has offered no inducements to the witness." *Commonwealth* v. *Henson*, 394 Mass. 584, 587 (1985). The "general rule" is to allow cross-examination of a witness on a pending charge even in the absence of inducements. *Commonwealth* v. *Hamilton*, 426 Mass. 67, 72 (1997).

The court has, however, acknowledged that voir dire may reveal otherwise: "We grant that in a particular case a voir dire hearing might show no possibility of bias arising from charges (particularly minor charges) pending against a witness in another county (or jurisdiction)." *Commonwealth* v. *Henson*, 394 Mass. at 587. The voir dire in this case supports the trial judge's exercise of his discretion to exclude evidence of the prior

---

[2]Ted's status was unclear. There was no evidence of a final adjudication of the charge. Ted stated that he had not pleaded delinquent or not delinquent.

charge. The complainant's charge was pending in another county, and he seemed to have no understanding of its current status. The charge was not recent. Ted also testified without contradiction that he had not been to court in connection with the juvenile delinquency proceeding for "almost two years." Contrast *Commonwealth* v. *Henson*, 394 Mass. at 587-589 (district attorney was actively considering dropping the charges against one of the witnesses; second witness against whom charges were pending in the same county had offered testimony at trial that differed significantly from a statement she had made to the district attorney before the charges against her arose). Furthermore, Ted had already been placed at the school, a restrictive environment for students with behavioral problems including prior sexual offenses. It is difficult therefore to conceive how the dormant rape charge against him provided Ted with a motive to lie about the incident with the defendant.

Moreover, Ted was not discovered in an "arguably compromising situation" that provided him a reason or need to cast blame on others to avoid blame or suspicion on himself. *Commonwealth* v. *Allen*, 29 Mass. App. Ct. 373, 378 (1990). Contrast *Commonwealth* v. *Joyce*, 382 Mass. 222, 224 (1981) (complainant who accused the defendant of rape could have feared being accused of prostitution, as she had been on two prior, similar, occasions). Contrast also *Davis* v. *Alaska*, 415 U.S. 308 (1974) (some suspicion focused on the juvenile witness who testified at trial, as his prior delinquency was for burglary and the stolen property was found near his home); *Commonwealth* v. *Henson*, 394 Mass. at 588 (witness was a passenger in the car from which a gun was fired).

Finally, the complainant did not go to the police with the charges nor was he questioned as part of an ongoing criminal investigation. Rather, he disclosed the information to his school counselors during a treatment session. This further negates the defendant's theory that Ted was currying favor with the Commonwealth and suggests that any connection between the two cases is speculative.

The defendant argues that certain developments at trial enhanced the probative value of the rape charge. Because the prosecution was allowed to introduce evidence to the effect that

Ted was the victim of physical abuse by his father, the defendant claims in his brief that the judge's ruling enabled the Commonwealth to portray the witness as a "victimized waif who was only at [the school] to protect him from abuse." We conclude that the depiction of Ted at trial was equivocal and not one-sided. Ted was described by his case worker as a troubled youth with significant behavioral problems, including stealing and lying.

In closing, the prosecution also emphasized Ted's lack of motive to fabricate a story of rape against someone who had treated him well.[3] Here we must be alert to the danger of the Commonwealth taking undue advantage of the ruling excluding evidence of the rape charge. See *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 9 (1980). Compare *Commonwealth* v. *Connor*, 392 Mass. 838, 842 (1984); *Commonwealth* v. *Elliot*, 393 Mass. 824, 832 (1985). While the defense attorney pointed out in closing that "throughout the time he was in the program [Ted] stole and he lied and he wasn't honest," he was not able to introduce the rape charge as a motive for lying. The prior rape charge would not, however, have countered the thrust of the prosecution's closing, which was Ted's lack of motive to falsely accuse this particular defendant. The rape charge against Ted simply does not provide him with a plausible motive to accuse the defendant falsely. Any connection between the two cases remains highly speculative.[4] See *Commonwealth* v. *Thevenin*, 33 Mass. App. Ct. at 592.

---

[3]The prosecutor argued in closing as follows: "Does he have a motive to lie or a motive to make this up? What possible reason. [The defendant] was the only person he's had in his life for a long time [who] treated him as an individual . . . . Why pick on [the defendant]. He's been in foster homes and programs for ten years, and I'll blame the one person who's been good to me, who spent money on me . . . who treated me like a human being. Why would he accuse [the defendant]. I suggest it's because it happened."

[4]The Commonwealth also relies on the rape shield statute, G. L. c. 233, § 21B, to support the judge's decision to exclude the charge. The applicability of the rape shield statute to the instant case is advanced by the Commonwealth and hotly disputed by the defendant. The defendant claims that the Commonwealth "stakes out a novel position" in arguing that the statute shields sexual assault charges against a complaining witness from disclosure in addition to prior consensual sexual conduct by, and prior assaults against, the witness. He cites no cases to support his argument, nor does the Commonwealth cite any cases in which a sexual assault by a victim was found to

Given all these considerations, particularly the remoteness of the dormant charges in the juvenile case, and the thoroughness of the voir dire that revealed no promises, rewards or inducements or any other offer of assistance, help or benefit or evidence to support an expectation or anticipation of such, we conclude that it was within the trial judge's discretion to exclude testimony on the prior rape charge in the instant case.[5]

3. *The silence of the defendant's sister and mother.* The Commonwealth elicited testimony over the objection of the defendant regarding the failure of the defendant's mother and sister to go to the police with exculpatory information, i.e., that Ted was only upstairs with the defendant for a few minutes, the bedroom door remained open, and his sister stood outside the room while they were in it. The defendant objected to the introduction of this testimony and to the judge's jury instruction as it related to the witnesses' decision not to go to the police. On appeal the defendant also claims error based on the conjunction of this instruction with the judge's instruction on alibi.

We reference the well known standard for introducing and instructing on witness silence: "[B]efore the Commonwealth [may] question a witness on pretrial silence and thereby implicate that witness as having recently fabricated testimony, the Commonwealth must establish that 'the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means

---

be covered by the rape shield statute. Regardless, the Commonwealth does not explain how the applicability of the statute would affect the analysis of the admissibility of this evidence to demonstrate witness bias, except to suggest that relevance of the charge must be "clearly" shown, as suggested by *Commonwealth* v. *Joyce*, 382 Mass. at 232 (Hennessey, C.J., concurring). Given the thoroughness of the voir dire and the trial judge's conclusion that the relevance of the charge was purely speculative, we need not reach the issue.

[5]The trial judge was well within his discretion to reject the defendant's fallback argument that the rape charge should be the subject of cross-examination because it reveals knowledge of sex that Ted would not otherwise have. How the rape of a mentally retarded girl would provide Ted, as the defendant contends, with the "empirical wherewithal to contrive his allegation[]" of his own rape by his forty year old male counselor is conjecture at best.

of reporting it to the proper authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so.' " *Commonwealth* v. *Roberts*, 433 Mass. 45, 50 (2000), quoting from *Commonwealth* v. *Gregory*, 401 Mass. 437, 444-445 (1988), quoting from *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 296-297 (1981).

These requirements were met in this case. The defendant's mother and sister knew the details of the pending charges against him. Their "familial relation" to the defendant gave them "a reason to make the information available," *Commonwealth* v. *Roberts*, 433 Mass. at 50, although we also recognize that this relationship made their information less likely to be believed, which they would have understood as well. They were also both aware that a Melrose detective had questioned the defendant concerning the rape of a student at the school. They knew how to contact the proper authorities, as the defendant's sister had seen the officer's card and his mother was familiar with the Melrose police department through her work on the town's personnel committee. Finally, neither the defendant's lawyer nor the defendant himself had instructed them not to go to the police.

We are not persuaded by the defendant's argument that the requirements of *Brown* were not satisfied because the investigating officer told the defendant when he interviewed him that he was likely to be charged and should get a lawyer. Although we are concerned that family members who only have their own testimony to offer, rather than some tangible or verifiable evidence, may legitimately question whether they have a reason to make their testimony available, and that the officer's advice in the instant case would only serve to strengthen their skepticism, we cannot rightly say that the officer's statement alone precludes testimony and instruction on witness silence where the *Brown* protocol has been followed. See *Commonwealth* v. *Roberts*, 433 Mass. at 50 (grandmother of defendant who "had been at the court house each time the 'case was on' " had reason to go to the proper authorities with her testimony that the defendant was with her in New York City at the time of the

murder).[6] For the same reason, we find that the jury instruction, at least as it related to the decision of the sister and mother not to go to the police, was within the judge's discretion.[7]

The defendant finally contends that the emphasis placed on witness silence had a "burden-shifting" effect. We disagree. The testimony and instruction regarding the witnesses' silence may have permitted an inference that witness credibility was suspect, but it did not shift the burden of proof onto the defendant. See generally *Commonwealth* v. *Sellon*, 380 Mass. 220, 233 (1980). Furthermore, the judge properly instructed the jury on the burden of proof.

4. *Consciousness of guilt.* At trial, Toby Zupnick, a case worker at the school, testified about a weekly staff meeting that occurred approximately one month after the events leading to the charges against the defendant. Toward the end of the meeting, the defendant stated that he had heard from some of the school's residents that Zupnick and another case worker at the school had accused him of "offending or planning on sexually offending some of the residents." Zupnick testified that she immediately denied the defendant's allegation, and explained that while she was not concerned with him "offending," she had discussed, at a recent therapy session with students, the defendant's leniency and the possibility that he was being manipulated by them. Nonetheless, she testified, the defendant was very upset. A follow-up meeting was held later in the day with the defendant, the two case workers, and two residents, including Ted. At that meeting Ted told the defendant, "I'm sorry I manipulated you." The defendant was scheduled to meet

---

[6]In *Commonwealth* v. *Roberts*, the court also downplayed the importance of the question and answer regarding witness silence, deeming them "unlikely to have significantly affected the witness's credibility because '[c]ommon sense and the case law dictate that the testimony of a blood relative of the defendant is inherently less credible than the testimony of other witnesses.' " *Commonwealth* v. *Roberts*, 433 Mass. at 51, quoting from *Commonwealth* v. *Thomas*, 429 Mass. 146, 153 (1999).

[7]Inclusion of the alibi instruction where there really was no classic alibi at issue was surplusage. Placing it immediately after the instruction regarding the sister's and mother's decision not to go to the police does not change our analysis of the *Brown* protocol above.

with the director of the school the next day, but the meeting never took place because he sent a facsimile message containing his resignation that night.

Urging the admission of the testimony, the Commonwealth argued that "it goes almost towards a consciousness of guilt." The defendant objected, arguing that it was irrelevant and a "double-edged sword." The trial judge allowed it in because "[i]t has some relevance to the Commonwealth's case, [and] ties things together." No jury instruction on consciousness of guilt was requested or given.

"A trial judge may, in his discretion, admit evidence of acts committed subsequent to a charged offense" as evidence of consciousness of guilt. *Commonwealth* v. *Cardarelli*, 433 Mass. 427, 434, 436 (2001). Cases considering evidence on consciousness of guilt generally focus on a defendant's flight, escape, concealment or lies. See *Commonwealth* v. *Rojas*, 388 Mass. 626 (1983) (flight, false statements); *Commonwealth* v. *Burke*, 414 Mass. 252, 260 (1993) (flight); *Commonwealth* v. *Cardarelli*, *supra* (flight). While "connected with the facts of the case [and] not . . . too remote in time," *Commonwealth* v. *Barrett*, 418 Mass. 788, 794 (1994), the conduct of the defendant here that the prosecution argues evinces consciousness of guilt is more ambiguous. Cf. *Commonwealth* v. *Brown*, 414 Mass. 123, 126-127 (1993) (evidence of man walking away from crime scene with his face averted did not constitute evidence of flight).

We conclude that it was error for the trial judge to admit the evidence as consciousness of guilt, but that the error resulted in no prejudice to the defendant. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 n.7 (1999). We read the statement as ambiguous and, for the most part, as defense counsel at trial stated, irrelevant. Although an argument can be made that the defendant was overreacting in the meeting, the statement seems to reflect an understandable sensitivity to what the residents had told him, particularly if they had mischaracterized what the staff had said. The defendant's case is a far cry from those relied on in his

brief in which rape defendants were greatly prejudiced by the admission of sexually suggestive photographs or pamphlets.[8]

*Judgments affirmed.*

---

[8]See *Commonwealth* v. *LaSota*, 29 Mass. App. Ct. 15, 24-27 (1990) (error to admit pamphlet urging incestuous relationships found in home of defendant charged with rape of his daughter); *Commonwealth* v. *Darby*, 37 Mass. App. Ct. 650, 653-654 (1994) (photograph of a rape defendant naked and in an aroused state was not probative of the question of whether he committed the rape of the minor).